

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-18-1997

# Torres v. Chater

Precedential or Non-Precedential:

Docket
96-1883

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Torres v. Chater" (1997). *1997 Decisions*. Paper 222.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/222

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 18, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1883

EDWIN R. CORDOVA TORRES,
     Appellee

v.

SHIRLEY S. CHATER,
Commissioner of Social Security,
     Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 95-cv-02199)

Submitted Pursuant to Third Circuit LAR 34.1(a).
May 21, 1997

Before: GREENBERG, ROTH and WEIS, Circuit Judges.

Filed September 18, 1997

Jeffrey L. Greenwald, Esquire
640 Hamilton Mall, Suite 301
Allentown, PA 18101

Attorney for Appellee


Alfred R. Mollin, Esquire
Anne M. Lobell, Esquire
United States Department of Justice
Civil Division, Appellate Staff
10th & Pennsylvania Ave., NW
Washington, D.C. 20530-0001

James A. Winn, Esquire
Social Security Administration
3535 Market Street
Box 13716, Room 9100
Philadelphia, PA 19101

Attorneys for Appellant

OPINION OF THE COURT

WEIS, Circuit Judge.

When the Social Security Act was amended to eliminate benefits for disability caused by alcohol and drug addiction, Congress divided the claimants into two groups. The district court decided that the distinction was based on whether the disability existed on the effective date of the amendment. We conclude, however, that the test is whether the claims had been "finally adjudicated by the Commissioner" before or after the effective date of the amendment. Accordingly, we will reverse the order of the district court.

After the denial of his original application for Supplemental Social Security Income (SSI) benefits, the claimant, Edwin R. Cordova Torres, reapplied, relying principally on his alcoholism as the cause of his disability. In 1994, an ALJ denied benefits and the Appeals Council affirmed. Claimant filed his request for review by the district court in May 1995. On March 21, 1996, the district court remanded the case to the Commissioner "for further determination as to the nature and extent of the plaintiff's alcohol problem, his ability to control his condition and his employability."

2

Almost two months later on May 16, 1996, the Commissioner filed a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate the remand order because legislation enacted on March 29, 1996 eliminated alcoholism as a primary basis for SSI benefits. Exercising its discretion, the district court concluded that the Commissioner's motion was appropriate and considered it on the merits.

The Commissioner contended that the amending legislation barred further consideration of the plaintiff's claim because it had not been "finally adjudicated by the Commissioner" before March 29, 1996, as required by the statute's effective date provision. The district court, however, read the effective date language as directed toward the existence or non-existence of disability on that day, thus exempting cases pending on the date of enactment. Accordingly, the court denied the Commissioner's motion.

I.

In view of the somewhat unusual procedural posture of this case, we must first determine whether the order is appealable. The district court's initial remand to the Commissioner called for further review of evidence already

existing in the record. It was fifty-six days later when the Commissioner filed her motion arguing that the change in statutory law disposed of the claim in its entirety. Following the rejection of her contentions by the district court, the Commissioner appealed to this Court.

Rule 60(b) provides that on motion "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . (6) any other reason justifying relief from the operation of the judgment." Preliminarily, it would appear that an order denying a Rule 60(b) motion is appealable under 28 U.S.C. S 1291. See Brower v. Director, Ill. Dep't of Corrections, 434 U.S. 257, 263 n.7 (1978); Binker v. Pennsylvania, 977 F.2d 738, 744 (3d Cir. 1992); Daily Mirror, Inc. v. New York News, Inc., 533 F.2d 53, 56 (2d Cir. 1976) ("An order denying relief under Rule 60(b) is an appealable order, but the appeal brings up only the correctness of the order itself"); 11 Charles Alan Wright,

3

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure S 2871 (2d ed. 1995).

There is an interdependence between the "finality" required for Rule 60(b) and section 1291. In some instances, the Court of Appeals may not entertain an appeal under section 1291 because the underlying order in the district court is purely interlocutory and, thus, not within the scope of Rule 60(b), which applies only to "final" judgments and orders. An example of that situation might be a discovery order or similarly preliminary step in litigation being conducted in the district court.

In Kapco Manufacturing Co. v. C & O Enterprises, 773 F.2d 151, 154 (7th Cir. 1985), a district court order directing the parties to reduce a settlement to writing was interlocutory, an "intermediate step" and not "final." Hence, the order was not within the scope of Rule 60(b) and, as such, not appealable under section 1291. See also St. Mary's Health Ctr. v. Bowen, 821 F.2d 493, 497 (8th Cir. 1987) (order granting partial summary judgment on liability was interlocutory and not "final" under Rule 60(b) nor appealable under 28 U.S.C. S 1291).

In Kapco, however, the Court pointed out the distinction between preliminary directives issued during the course of ordinary civil litigation, which the district court has the power to modify, and orders remanding a case to an administrative agency for reconsideration. Although such remand orders are usually interlocutory, see AJA Associates v. Army Corps of Engineers, 817 F.2d 1070,

1073 (3d Cir. 1987), they are not always so. If, for example, a party alleges under Rule 60(b) that a remand had been procured by fraud, denial of the motion would be dispositive of that issue and "wrap up all matters pending on the docket," thus making the decision final. Kapco, 773 F.2d at 153.

As we noted in Horizons International, Inc. v. Baldridge, 811 F.2d 154, 158 (3d Cir. 1987), "interpretations of section 1291 announced in more garden variety civil litigation suits are not controlling" in reviews of agency actions. Such cases may present the issue "differently by virtue of the relief sought and the type of relief ordered." Id.

4

at 159. Although Horizons cited Marshall v. Celebrezze, 351 F.2d 467 (3d Cir. 1965) for the general proposition that a remand to the Secretary of HEW for the taking of additional evidence was interlocutory, id., we have recognized an exception for cases where barring appellate review is the practical result of those orders. United States v. Spears, 859 F.2d 284, 286 (3d Cir. 1988); AJA Assocs., 817 F.2d at 1073. In such instances, appeals are permissible.

In Sullivan v. Finkelstein, 496 U.S. 617 (1990), the Supreme Court discussed the appealability of an order remanding a disability benefits case to the Secretary of HHS for a further review of the record. In the circumstances of that case, the practical effect of the remand was to abrogate some of the Secretary's regulations.

The Court concluded that the remand order came within the fourth sentence of 42 U.S.C. S 405(g), which authorizes a district court to enter a "judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing." The Court doubted that the Secretary could later appeal, if on remand, he ordered payment of benefits. Consequently, the Secretary would be denied appellate review of the district court's ruling that invalidated the regulations. Id. at 625; see also Travis v. Sullivan, 985 F.2d 919, 921 (7th Cir. 1993).

Finkelstein is not precisely on point because the remand order in the present case did not directly impair the Commissioner's ability to deny benefits. Moreover, it is not the remand that is before us, but the refusal to grant the Rule 60(b) motion. Therefore, it is the merits of that denial, and not the remand, that we must address. See Brower, 434 U.S. at 263 n.7; Daily Mirror, 533 F.2d at 56.

Nevertheless, the case here is in the same posture as that in Finkelstein. If we do not entertain the appeal at this time, on remand the claimant may receive an award of benefits, in which event he will not appeal, and it is very doubtful that the Commissioner could appeal. See Finkelstein, 496 U.S. at 625. Consequently, the Commissioner would be unable to secure appellate review of the alcohol and drug abuse amendment as applied to this claim.

5

In the light of the circumstances present in this case, we conclude that because the claim on remand would likely escape appellate review, the district court properly considered that order as final for purposes of Rule 60(b) and appropriately considered the legal effect of the alcoholism amendment. Consequently, the denial of the motion is also final and appealable to this Court under section 1291.

II.

Congress amended Title II of the Social Security Act in 1996 to bar the award of disability benefits based on alcoholism or drug addiction. The amendment, codified at 42 U.S.C. S 423(d)(2)(C), reads as follows: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

On its face, the amendment's relevance to this case is not seriously questioned. The principal challenge is to the construction of the amendment's effective date as it applies to the claimant.

The relevant statutory language states: "The amendments . . . shall apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits under title II of the Social Security Act based on disability on or after the date of the enactment of this Act, and, in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997." Pub. L. 104-121 S 105(a)(5)(A), 110 Stat. at 853; 42 U.S.C. S 405 note (1996).

The district court concluded that the claimant was not barred because his application for benefits was not "based

on disability on or after" the effective date of the amendment, March 29, 1996. Therefore, he could receive benefits for the disability that existed before that time.

Similarly, the court believed that the claimant was not seeking payments that would be received after January 1, 1997. Essentially, the district court's construction of the amendment rests on the proposition that the clause "on or after the date of the enactment" modifies the word "disability." The Commissioner, on the other hand, contends that the "on or after" clause modifies "applies for, or whose claim is finally adjudicated by the Commissioner."

A number of district courts have discussed these two views of the statutory language and have labeled the former the "disability" and the latter the "adjudication" interpretation. Among the opinions adopting the disability construction are Hall v. Chater, No. 96C580 (N.D. Ill. Mar. 21, 1997) and Teitelbaum v. Chater, 949 F. Supp. 1206, 1212-13 (E.D. Pa. 1996). Cases adopting the adjudication theory include Miller v. Callahan, 964 F. Supp. 939, 947 (D.Md. 1997); Connor v. Chater, 947 F. Supp. 56, 60 (N.D.N.Y. 1996); Sousa v. Chater, 945 F. Supp. 1312, 1328-30 (E.D.Cal. 1996); Santos v. Chater, 942 F. Supp. 57, 63 (D.Mass. 1996); Willis v. Chater, 939 F. Supp. 1236, 1239-40 (W.D.Va. 1996). Two Courts of Appeals have referred to the amendment, but have not been required to construe its statutory language. See Perkins v. Chater, 107 F.3d 1290 (7th Cir. 1997); Newton v. Chater, 92 F.3d 688 (8th Cir. 1996).

Claimant argues that the amendment should be applied prospectively only and relies on Landgraf v. USI Film Products, 511 U.S. 244 (1994), in which the Court discussed the effect of retroactive legislation on vested substantive rights. Claimant reasons that because his disability existed before the amendment was enacted, he had a settled expectation of receiving benefits for the period before the effective date.

Claimant has received no benefits and none have been awarded. His status is simply that of an applicant. Individuals in that category are entitled to procedural due process, see Flatford v. Chater, 93 F.3d 1296, 1303-05 (6th Cir. 1996); Kelly v. Railroad Retirement Bd., 625 F.2d 486, 489-90 (3d Cir. 1980), but as the Supreme Court has reminded us, procedural due process does not impose a constitutional limitation on Congress' power to make

changes in eligibility for certain entitlements. Atkins v. Parker, 472 U.S. 115 (1985).

In Atkins, the Court rebuffed objections to a congressional reduction of food stamp benefits: "[I]t must be assumed that Congress had plenary power to define the scope and the duration of the entitlement to food-stamp benefits and to increase, to decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program." 472 U.S. at 129. Continuing in the same theme, the Court said that when the legislature adjusts benefit levels that "determination provides all the process that is due." Id. at 129-30 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 432-33 (1982)); see also United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 174 (1980) ("railroad benefits, like social security benefits, are not contractual and may be altered or even eliminated at any time.").

Thus, if a recipient's right to future benefits may be terminated by a statute, it follows that an applicant who has never been declared eligible may as well be deprived of an inchoate right.

Claimant relies on the definition of "entitled" in Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469 (1992), a case brought under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. S 901. There, the Supreme Court said that "the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend on whether the right has been acknowledged or adjudicated." Id. at 477.

The question in Cowart was whether a person who had sustained an injury in the workplace was an individual "entitled to compensation" under the Act and, as such, required to obtain his employer's consent before settling a tort claim against a third party.

We note that the word "entitled" does not appear in the effective date provisions of the alcoholism amendment. Furthermore, usage in the Longshore and Harbor Workers' Compensation Act does not carry over naturally to the circumstances before us. Cowart did not address the

8

retroactivity problems of legislation affecting vested

entitlements.

More fundamentally, Landgraf discussed a statute that did not disclose Congress' will on retroactivity. The amendment at issue before us, however, does set out when it will apply in terms that are sufficiently clear to provide necessary guidance. See also Lindh v. Murphy, ___ U.S. ___, No. 96-6298, 1997 WL 338568, at * 4 (U.S. June 23, 1997) (normal rules of construction apply in determinations of a statute's temporal reach).

The amendment focuses on when a claim is filed or adjudicated. We are convinced that, grammatically, "after the date of enactment" modifies the clause, "whose claim is finally adjudicated by the Commissioner." The amendment thus establishes two separate groups who are affected in different ways.

1. Those whose claims were not "finally adjudicated by the Commissioner" before March 29, 1996. The individuals in this group receive no benefits. The Commissioner asserts that the claimant falls into this category.

2. Those whose claims have been favorably and "finally adjudicated by the Commissioner" before the effective date of the amendment, March 29, 1996. The individuals in this group had been receiving payments and were granted a grace period until January 1, 1997 during which they could adjust to the loss of the monthly income after that date and perhaps reapply for benefits based on other disabilities. There is a reasonable basis for the distinction between the two categories -- the people who have never obtained payment do not have the need to adjust as do those who have received benefits in the past.

Strong support of the adjudication interpretation also lies in the well-settled tenet of statutory construction that all provisions of the statute must be construed together to give each some independent meaning. Kowalski v. L & F Prods., 82 F.3d 1283, 1287-88 (3d Cir. 1996). The language applied to first category situations fits neatly when the focus is on the date of adjudication. If a claim isfiled, or finally adjudicated, post-enactment, the amendments apply in full.

In contrast, if the focus is on the date of disability, then the "final adjudication" language in the first category becomes superfluous. Stated another way, if an individual files a claim based upon a post-enactment disability, then the date of final adjudication would be irrelevant because

the claim would have been void ab initio. Thus, in this reading of the statute there is no phrase that explains in a temporal way which applications are covered.

The weakness of the disability interpretation adopted by the district court may be further demonstrated by an examination of the results of applying it to the two categories. In the first group (those whose claims had not been "finally adjudicated"), payments "based on disability on or after" March 29, 1996 would not be made, although by implication benefits could be awarded for periods of disability before that date. This result, although strained, is not beyond reason.1

However, when the disability interpretation is applied to the second category, the fallacy of this approach becomes apparent. The point is illustrated by repeating below the language that applies to the second category and inserting the modifying language from the first category in brackets. It reads: "[A]nd, in the case of any individual . . . whose claim has been finally adjudicated by the Commissioner with respect to, such benefits [based on disability] before [March 29, 1996], such amendments shall apply only with respect to such benefits [based on disability before March 29, 1996] for months beginning on or after January 1, 1997."

The result is confusing to say the least. Among other things it leads to the question of whether benefits are due for disability between March 29, 1996 and January 1, 1997.

It is persuasive, however, that the second category

_____

1. We note, however, that SSI benefits are not payable for a period prior to a claimant's application. 20 C.F.R. S 416.335; see also Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989). Thus, if a claimant applied for SSI benefits based on alcoholism after March 29, 1996, the claim would have to be based on disability after that date.

10

description deletes the words "based on disability" and refers instead to a claim that "has been finally adjudicated . . . with respect to, such benefits before . . . enactment." Thus, when date of enactment is tied to a claim that has been finally adjudicated, the meaning becomes quite clear -- benefits awarded before the date of enactment continue until January 1, 1997. Not only is this approach clearer, it is consistent with the legislative history.

The Ways and Means Committee Report discusses the effective date of the legislation as follows: "Generally, changes apply to benefits for months beginning on or after the date of enactment. However, an individual entitled to benefits before the month of enactment would continue to be eligible for benefits until January 1, 1997." H.R. Rep. 104-379, 1st Sess. 17 (1995). The tenor of the Report also reflected Congressional intent to end benefits sooner rather than later. "The intent of this proposal is to eliminate payment of cash Social Security and SSI disability benefits to alcoholics and drug addicts" and channel part of the savings into treatment programs. Id.

Implicit in claimant's argument is the notion of unfairness. But drawing lines is the business of Congress and inevitably individuals on the wrong side of the division do not fare well. The result is unfortunate for those adversely affected, but arbitrariness is often unavoidable.

Our study of the statute convinces us that it is the date of adjudication, and not the time when disability exists, that triggers the application of the effective date. "The upshot is that our analysis accords more coherence to [the amendment] than any rival we have examined. That is enough." Lindh, 1997 WL 338568 at *8.

A remaining issue requires us to interpret the meaning of the term "finally adjudicated by the Commissioner." Some district court opinions hold that after the claim reaches the district court it has been "finally adjudicated by the Commissioner." See, e.g., Santos, 942 F. Supp. at 64; Willis, 939 F. Supp. at 1241.

In light of the circumstances in this case, we have no difficulty in concluding that the claim has not been "finally adjudicated." The case was remanded by the district court

11

to the Commissioner for the specific purpose of further adjudication. A claim subject to further hearing by the Commissioner cannot be "finally adjudicated."

We conclude that the claim in this case is barred by the statutory amendment.2 Accordingly, the order of the district court will be reversed and the case will be remanded for further proceedings consistent with this Opinion.

        A True Copy:
Teste:

Clerk of the United States Court of Appeals

for the Third Circuit

_____

2. Congress amended the relevant provisions ofS 105(b)(5) on August 5, 1997 as applicable to SSI claims. The current version reads:

> (D) For purposes of this paragraph, an individual's claim, with respect to supplemental security income benefits under title XVI of the Social Security Act based on disability, which has been denied in whole before the date of the enactment of this Act, may not be considered to be finally adjudicated before such date if, on or after such date --

> (i) there is pending a request for either administrative or judicial review with respect to such claim, or

> (ii) there is pending, with respect to such claim, a readjudication by the Commissioner of Social Security pursuant to relief in a class action or implementation by the Commissioner of a court remand order."

> Technical Amendments Relating to Drug Addicts and Alcoholics, Balanced Budget Act of 1997, SS 5525, 5528. We find no need to consider either the application of this statutory change to the case before us, or its retroactivity.

12